1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT TUNSTALL,

11             Plaintiff,                    No. CIV S-06-0727 LKK EFB P

12         vs.

13   M. VEAL, Warden, et al.,

14             Defendants.              ORDER AND
                                        FINDINGS AND RECOMMENDATIONS
15   _____/

16         Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

17   action pursuant to 42 U.S.C. § 1983.  Currently before the court are defendants Cry, Khoury,

18   Kotila, and Silbaugh's unenumerated Fed. R. Civ. P. 12(b) motion to dismiss for failure to

19   exhaust administrative remedies prior to filing suit, and, in the alternative, for failure to state a

20   claim upon which relief may be granted, defendant Grannis' separately filed motion to dismiss

21   on the same bases,  and plaintiff's motion for a preliminary injunction.

22   **I.     Summary of Facts**[1]

23         At all times relevant to the complaint, plaintiff was an inmate in the custody of the

24   California Medical Facility at Vacaville (hereafter "CMF").  Complaint (hereafter "Compl."),

25   _____

26         [1]  The facts are taken from defendants' motions to dismiss and plaintiff's April 4, 2006,
     verified complaint.  All citations to the complaint refer to the pagination assigned by the court's
     Case Management – Electronic Case Filing system.

1   generally.  Defendant Cry was the Inmate Appeals Coordinator, defendant Khoury was the Chief

2   Deputy of Clinical Services, defendant Kotila was a staff psychologist, defendant Silbaugh was

3   the Chief Psychologist of the Mental Health Services Delivery Team at CMF.  Defendant Cry,

4   Khoury, Kotila, and Silbaugh's Motion to Dismiss (hereafter "Defs.' Mot. to Dism.").

5   Defendant Grannis was Chief of Inmate Appeals.  Defendant Grannis' Motion to Dismiss

6   (hereafter "Grannis' Mot. to Dism.").

7        Plaintiff claims that he is developmentally disabled and suffers from Chronic Seizure

8   Disorder, Short Term Memory Loss, and Post Traumatic Stress Disorder (PTSD).  Compl., ¶ 4

9   and p. 3.  There is an entry in plaintiff's medical records dated November 10, 2004, signed by

10  Doctors Capozzoli and Bick, who are not defendants in this action, stating:

11        Mr. Tunstall is status post neurosurgery and has light sensitivity.  I recommend
          that he be allowed to wear his photogray or dark glasses in the visiting area when
12        under the fluorescent lights there.  Additionally, I recommend that he be allowed
          to use the handicap room because of the lesser degree of overhead glare in that
13        room.  The chrono is valid for one year (through November 9, 2005), subject to
          institutional, Custody, and safety requirements, and subject to renewal by the
14        patient's primary care physician when needed.

15  Compl., at 48.

16        Doctors Capozzoli and Bick signed an additional chrono on January 18, 2005, stating:

17        . . . I request this patient be provided with cell-based (not necessarily single-cell)
          housing rather than dormitory style housing due to a medical condition this
18        patient has that results in intermittent lapses of consciousness (partial complex
          seizures).  In this situation, I feel it would be safer for the patient to live in cell-
19        based housing rather than group living housing.  If cell-based housing is not
          available at this institution, he can be transferred to a facility that can meet his
20        clinical needs.

21  Compl., at 47.

22        Plaintiff sought the recommended treatment by filing a Request for Reasonable

23  Accommodation on September 25, 2006.  His appeal was reviewed at the informal level by

24  defendants Cry and Kotila, partially granted at the First Level of Review by defendant Silbaugh,

25  and denied at the Second and Director's Levels of Review by defendants Khoury and Grannis,

26  respectively.  Compl., at 31-33, 35, 36.

1    Defendant Grannis investigated plaintiff's claims before responding to his grievance.

2    Grannis' Mot. to Dism., at 3.  In the course of her investigation, she contacted defendant Cry to

3    inquire about plaintiff's housing.  *Id*.  She was informed that plaintiff's housing unit was

4    specifically designed for Correctional Clinical Case Management System (CCCMS) and

5    developmentally disabled inmates.  *Id*.  At this time, CMF had limited celled housing and, while

6    celled housing had been recommended for plaintiff, it was not medically ordered.  *Id*.  Grannis

7    confirmed with CMF staff that plaintiff had been appropriately housed.  *Id*.

8    Plaintiff seeks PTSD therapy, cognitive therapy, cell-based housing, and 2.5 million

9    dollars in damages.  Compl., at 17.

10   **II.     Standards Applicable to this Motion**

11   Defendants Cry, Khoury, Kotila, Silbaugh, and Grannis seek dismissal under Rule 12(b)

12   of the Federal Rules of Civil Procedure.  While the Ninth Circuit has stated that Rule 12(b) is the

13   proper mechanism for resolving questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*,

14   315 F.3d 1108 (9th Cir. 2003), the reason underlying that conclusion has been undermined.  The

15   Ninth Circuit found that failure to exhaust was a matter in abatement which should be raised in a

16   motion made under "unenumerated Rule 12(b)."[2]  *Wyatt*, 315 F.3d at 1119.  However, the United

17   States Supreme Court recently clarified that failure to exhaust is an affirmative defense which

18   defendant has the burden of pleading and proving.  *Jones v. Bock*, 549 U.S. ___, 127 S.Ct. 910,

19   921 (2007).  Federal courts appropriately consider affirmative defenses on summary judgment.

20   Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits

21   presented for the purpose of proving the absence of exhaustion.

22   ////

23   _____

24       [2]  *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is
     not a challenge to the sufficiency of the complaint.  It is a motion in which defendant must raise
25   and prove by evidence the absence of exhaustion.  *Id*.  In this regard, the Ninth Circuit in *Wyatt*
     provides further guidance.  It recognizes that when the district court looks beyond the pleadings
26   to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure
     closely analogous to summary judgment."  *Id*., n.14

1    Accordingly, the court finds that a motion for summary judgment is the proper mechanism for

2    resolving the question of whether plaintiff satisfied the exhaustion requirement.

3    **III.    Rule 56 Standards**

4            Summary judgment is appropriate when there is no genuine issue of material fact and the

5    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

6    *Catrett*, 477 U.S. 317, 322 (1986).[3]  As explained by the Ninth Circuit, the utility of Rule 56 to

7    screen which cases actually require resolution of disputed facts over material issues (through

8    presentation of testimony and evidence at trial) has been clarified and enhanced.

9               In three recent cases, the Supreme Court, by clarifying what the
            non-moving party must do to withstand a motion for summary
10           judgment, has increased the utility of summary judgment. First, the
            Court has made clear that if the non-moving party will bear the
11           burden of proof at trial as to an element essential to its case, and
            that party fails to make a showing sufficient to establish a genuine
12           dispute of fact with respect to the existence of that element, then
            summary judgment is appropriate.  *See Celotex Corp. v. Catrett*,
13           477 U.S. 317 (1986).  Second, to withstand a motion for summary
            judgment, the non-moving party must show that there are "genuine
14           factual issues that properly can be resolved only by a finder of fact
            because they may reasonably be resolved in favor of either party."
15           *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis
            added).  Finally, if the factual context makes the non-moving
16           party's claim implausible, that party must come forward with more
            persuasive evidence than would otherwise be necessary to show
17           that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v.*
            *Zenith Radio Corp.*, 475 U.S. 574 (1986).  No longer can it be
18           argued that *any disagreement* about a material issue of fact
            precludes the use of summary judgment.

19

20   *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert.*

21   *denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no

22   "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to

23   _____

24           [3]  On June 7, 2006, the court expressly informed plaintiff of the requirements for
     opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v.*
     *Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and
25   *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).  Pursuant to *Wyatt*, 315 F.3d at
     1120, n.4, that order also expressly informed plaintiff of the requirements for opposing a failure
26   to exhaust motion that is supported by affidavits or declarations and exhibits.

1  establish the existence of an element essential to that party's case, and on which that party will

2  bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236,

3  239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

4  **IV.   Failure to Exhaust**

5       The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

6       No action shall be brought with respect to prison conditions under section 1983 of
        this title, or any other federal law, by a prisoner confined in any jail, prison or

7       other correctional facility until such administrative remedies as are available are
        exhausted.

8

9  This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001);

10  *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute

11  making exhaustion a precondition to judgment, but it did not.  The actual statue makes

12  exhaustion a precondition to *suit*." (citation omitted)).  A prisoner seeking leave to proceed *in*

13  *forma pauperis* in an action challenging the conditions of his confinement brings an action for

14  purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v.*

15  *Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006).  Therefore, a prisoner must exhaust available

16  administrative remedies before filing any papers in federal court and is not entitled to a stay of

17  judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th

18  Cir. 2002).  Defendant has the burden of proving that plaintiff did not exhaust. *Brown v. Valoff*,

19  422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

20       California prisoners may appeal "any departmental decision, action, condition, or policy

21  which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit.

22  15, § 3084.1(a).  The regulations require the use of specific forms but contain no guidelines for

23  grievance content. *Id.*, at §§ 3084.2, 3085.  Prisoners ordinarily must present their allegations on

24  one informal and three formal levels of review, although the informal and the first formal levels

25  may be bypassed. *Id.*, at § 3084.5.  A division head reviews appeals on the first formal level, *see*

26  *Id.*, at § 3084.5(b)(3) (authorizing bypass of the first formal level when the division head cannot

1    resolve it), and the warden or a designee thereof reviews appeals on the second formal level.  *See*

2    *Id*., at § 3084.5(e)(1).  Generally, completion of the third level, the Director's Level of Review,

3    exhausts the remedy.  *Id*., at § 3084.1(a).

4           To "properly" exhaust his administrative remedies, a prisoner must "complete the

5    administrative review process in accordance with the applicable procedural rules." *Woodford v.*

6    *Ngo*, 548 U.S. __, 126 S.Ct. 2378, 2386 (2006). Compliance with prison grievance procedures,

7    therefore, is all that is required by the PLRA to "properly exhaust."

8           With respect to the level of specificity required in a prisoner grievance, the Supreme

9    Court recently held that a prisoner need not identify all of the defendants named in his lawsuit

10   during the administrative grievance process.  *Jones v. Bock*, 549 U.S. ___, 127 S.Ct. 910, 922-23

11   (2007); see also *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir.2005).  Following denial of his

12   prison grievances for inadequate medical care, the plaintiff in *Jones*, an inmate of the Michigan

13   Department of Corrections ("MDOC"), filed a Section 1983 action, naming as defendants

14   several individuals not named during the grievance process.  *Jones*, 127 S.Ct. at 917.  The

15   district court dismissed plaintiff's complaint for failure to exhaust administrative remedies

16   because he had not identified any of the defendants named in his lawsuit during the grievance

17   process; the Sixth Circuit upheld the ruling.  The Supreme Court, however, held that in the

18   absence of a prison grievance procedure mandating the naming of each individual, the Sixth

19   Circuit rule imposing such a prerequisite to proper exhaustion was unwarranted.  *Id*. at 923.  The

20   MDOC grievance form did not require a prisoner to identify a particular responsible party.

21   Because the administrative appeals system did not require the prisoner to identify all potential

22   defendants by name, his failure to do so was not fatal to his attempts to satisfy 42 U.S.C. §

23   1997e(a).  See *id*. at 922-23.  As stated by the court, "it is the prison's requirements, and not the

24   PLRA, that define the boundaries of proper exhaustion."  *Id*. at 923.

25   /////

26   /////

**V.    Analysis**

As stated above, defendants Cry, Khoury, Kotila, Silbaugh, and Grannis contend that plaintiff cannot proceed with this action against him because plaintiff failed to exhaust the available administrative remedies.  Defendants do not dispute that plaintiff pursued his administrative remedies through the third and final level of formal review.[4]  *See* Defs.' Mot. to Dism., at 4 (citing to Appeals, Log No. CMF 05-2069 and Compl., Ex. A); Grannis' Mot. to Dism., at 7.  However, defendants argue that plaintiff still failed to exhaust his federal claims because his administrative grievances did not name all of the defendants presently named in the complaint.  *See* Defs.' Mot. to Dism., at 4; Grannis' Mot. to Dism., at 5-7.  This argument was specifically rejected in *Jones*, 127 S.Ct. at 923.

Similar to the grievance form in *Jones*, the 602 form used to initiate a CDC grievance does not require an inmate to name or identify specific persons.  *See* Cal. Code Regs. tit. 15, § 3085 .2(a)(1).  The 602 form requires an inmate only to describe the problem and the action that is requested.  *See id.*  Thus, because the CDC's own regulations do not require the prisoner to identify all potential defendants by name in the grievance, the PLRA cannot impose such a requirement as a prerequisite to exhaustion.  *See Jones*, 127 S.Ct. at 923.  Therefore, defendants' motions to dismiss are denied on this basis.

**VI.  Failure to State a Claim Upon Which Relief May be Granted**

In the alternative, defendants argue that the complaint must be dismissed because it fails to state a claim upon which relief may be granted.

////

---

[4]  His appeal was reviewed at the informal level by defendants Cry and Kotila, partially granted at the First Level of Review by defendant Silbaugh, and denied at the Second and Director's Levels of Review by defendants Khoury and Grannis, respectively.  Compl., at 31-33, 35, 36.  The grievance or 602 form alleged that plaintiff was denied a prescribed course of treatment for his chronic seizure disorder including PTSD and cognitive therapies, and cell-based housing.  *See* Compl., at 33.  Defendants claim that plaintiff never filed grievances regarding defendants' conduct; rather, he sought treatments by filing appeals and defendants reviewed those appeals.

1    A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

2  which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

3  support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467

4  U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Palmer v. Roosevelt*

5  *Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under

6  this standard, the court must accept as true the allegations of the complaint in question, *Hospital*

7  *Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light

8  most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v.*

9  *McKeithen*, 395 U.S. 411, 421 (1969).

10    To state a claim under 42 U.S.C. § 1983, plaintiff must allege an identified defendant

11  deprived plaintiff of a right secured to him by the Constitution or laws of the United States while

12  acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988).  Although the Federal

13  Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements

14  of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th

15  Cir. 1984).  Plaintiff must allege with at least some degree of particularity overt acts which

16  defendants engaged in that support plaintiff's claim. *Id.*  There can be no liability under 42

17  U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions

18  and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d

19  164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

20    "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

21  1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the

22  facts from which the inference could be drawn that a substantial risk of serious harm exists,' but

23  that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S.

24  825, 837 (1994)).  A difference of opinion between medical personnel regarding treatment does

25  not amount to deliberate indifference, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989), and

26  "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding

8

1    treatment does not give rise to a s 1983 claim," *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th

2    Cir.1981) (internal citation omitted).   To prevail, plaintiff "must show that the course of

3    treatment the doctors chose was medically unacceptable under the circumstances ... and ... that

4    they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson*

5    *v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1986) (internal citations omitted).

6            In his complaint, plaintiff alleges psychiatric staff at CMF failed to provide him with

7    PTSD and cognitive therapies, and failed to provide him with cell-based housing, as previously

8    recommended by other treating physicians.   Compl., at 4.   Plaintiff states that on September 26,

9    2005, he filed a Reasonable Modification or Accommodation Request based on the failure of the

10   psychiatric department to provide him with these accommodations.   In his appeal, plaintiff states

11   that he is "a particpate [sic] of the *Clark v. California*, Remedial Plan,"[5] and that he has been

12   "[g]ranted Board of Prison terms 1001 and Psych approval" due to being diagnosed with chronic

13   seizure disorder, memory loss, light sensitivity, and PTSD.   Compl., at 33.   He states that he has

14   doctor recommendations for cognitive rehabilitation and cell-based housing due to light

15   sensitivity and frequent seizures that render him unconscious and therefore vulnerable to

16   victimization.   *Id*.

17           Plaintiff's exhibit to his complaint, which is part of the complaint for purposes of a Rule

18   12(b)(6) motion[6], shows that defendant Silbaugh reviewed plaintiff's grievance at the first level

19   on November 21, 2005.   Compl., Pl.'s Exs. at 36.   Defendant Silbaugh stated:

20               You have requested the enrollment in a Post-traumatic therapy group within the
                CCCMS program which you attended last year.   Unfortunately, this particular
21              therapy group is no longer offered by the CCCMS program.   Coupled with this

22   _____

23           [5]  It appears plaintiff is referencing *Clark v. State of California*, 123 F.3d 1267 (9th Cir.
     1997), a class action suit brought by state inmates suffering from developmental disabilities
24   seeking injunctive relief against the states under the Americans with Disabilities Act and
     Rehabilitation Act.

25           [6]  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (documents not
26   physically attached to the complaint may be considered on a motion to dismiss if their
     authenticity is not contested and the plaintiff's complaint necessarily relies on them**).**

1    request is your report of memory deficits and your request for cognitive therapy to
2    assist with your memory loss issues.  To that end, you have been enrolled in the
     CCCMS Coping Skills Therapy group and should receive a priority ducat to
2    attend within the next two (2) or three (3) weeks.  Lastly, it is noted that a time-
     limited single cell chrono was issued and signed by medical staff.  The
3    compliance with this chrono, issued by medical staff, will need to be address [sic]
4    by you with the custodial staff and the medical staff person who created the time-
     limited single cell chrono.

5
     Based on a review of the issue involved, it is persuasive that your request for
6    continuing group therapy is partially granted.  In that CCCMS program no longer
     offers a Post-traumatic therapy group however, CCCMS program does offer
7    group therapy to assist with developing coping and memory strategies.
     Consequently, you have been enrolled in a Coping Skills therapy group and
8    should receive a priority ducat to attend in two (2) or three (3) weeks.  Your
     request for compliance with the time-limited single cell chrono is an issue to be
9    discussed between you, custodial staff, and the issuing medical staff.

10   *Id.*  Plaintiff argues that defendant Silbaugh also "avoided the issue of Plaintiff also being

11   developmentally disabled."  Compl., at 12.

12          Defendant Khoury denied plaintiff's appeal at the Second Level of review, stating:

13          A thorough review of your appeal reveals that these issues were addressed
            thoroughly and appropriately at the first level.  Your mental health status has
14          recently been described as stable, and you are not prescribed psychiatric
            medications.  The CCCMS treatment team offers you supportive services
15          including case management and weekly group therapy.  Based on a thorough
            review of the issue, it is persuasive that your mental health needs are being met
16          appropriately by the CCCMS team.  Some of the specific neurological / memory
            treatment you request is beyond the scope of the CDCR MHSDS mission.

17

18   Compl., at 35.

19          Plaintiff has failed to allege facts to support his contention that defendants Silbaugh and

20   Khoury were in any way personally involved in depriving him of the services he requested.

21   Defendant Silbaugh partially granted plaintiff's appeal, stated that the PTSD group was

22   discontinued but that the current CCCMS program offered cognitive and coping therapies, and

23   advised plaintiff on how to appropriately address his housing concerns.  Defendant Khoury

24   points out in her decision that plaintiff's mental health status was stable and his needs were being

25   met appropriately.  In his complaint, plaintiff has failed to assert facts that would show "that the

26   course of treatment the doctors chose was medically unacceptable under the circumstances . . .

1   and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's

2   health." *Jackson*, 90 F.3d at 332.  Plaintiff has failed to state a claim against either of these

3   defendants.

4         Plaintiff alleges that defendant Cry told defendant Grannis that plaintiff's housing is

5   specifically designed for CCCMS and developmentally disabled inmates.  Compl., at 13.

6   Plaintiff does not allege that the statement was patently untrue or how that statement may

7   otherwise amount to deliberate indifference.  Plaintiff has not stated a claim against defendant

8   Cry.

9         Plaintiff states that defendant Kotila denied plaintiff's first level appeal on November 18,

10   2005.  The court notes that the Reasonable Accommodation Request that plaintiff submitted on

11   September 26, 2005, was first reviewed by defendants Kotila and Cry.  Compl., at 33.  Under

12   "Discussion of Findings," that review states, "See memo: Nov. 21, 2005."  *Id.*  There is no memo

13   with that date among plaintiff's exhibits.  Without more information, plaintiff has failed to

14   establish that defendants Cry or Kotila were in any way deliberately indifferent to his serious

15   medical needs.  Plaintiff has not alleged any facts that would support a claim that Cry or Kotila

16   "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ."  *Farmer*, 511 U.S. at

17   837.  Therefore, plaintiff's complaint does not state a claim upon which relief may be granted

18   under section 1983 for violation of the Eighth Amendment.

19         Defendant Grannis denied plaintiff's appeal at the Director's Level.  Compl., at 31-32.  In

20   her denial, defendant Grannis stated that she investigated plaintiff's housing classification and

21   learned that it was "specifically designated for CCCMS inmates and Developmental Disability

22   Program (DDP) inmates."  *Id.*, at 31.  She further stated that "[w]hile Dr. Bick did recommend

23   celled housing for [plaintiff], CMF has very limited celled housing . . . Dr. Bick's

24   recommendation was noted; however, it was not a medical order and CMF staff state that

25   [plaintiff] is housed appropriately . . ."  *Id.*  Further, Grannis reasoned that plaintiff had been

26   classified as "DDI (able to function successfully in a general inmate population setting in a DDP

1   institution and usually does not require prompts to initiate activities of self-care and daily living,

2   but may need supervision when under stress)," and that plaintiff was receiving, as a CCCMS

3   inmate, "prompt access to mental health professionals for diagnosis and treatment . . . [and]

4   continuity of care by the tracking of his progress and linkage to accessory services available to

5   GP inmate (i.e. work assignments, school, and vocational educational programs.)" *Id.*  Plaintiff

6   has failed to allege how defendant Grannis' denial of his appeal demonstrates that she "[knew] of

7   and disregard[ed] an excessive risk to [plaintiff's] health . . . ." *Farmer*, 511 U.S. at 837.

8   Plaintiff has not adduced evidence that contradicts defendant Grannis' reasoning in denying his

9   appeal.  In fact, plaintiff concedes that he is receiving continuity of care.  Compl., at 8.  Plaintiff

10  has failed to state a claim against defendant Grannis.

11          Plaintiff has certainly suffered from poor health, yet he fails to demonstrate how the care

12  he was receiving at CMF was "medically unacceptable" under the circumstances.  His complaint

13  does no more than argue that doctors who previously treated him made certain recommendations

14  and that the defendants in this case did not follow those recommendations.  Plaintiff does not

15  allege facts demonstrating that the decisions not to follow the doctors' recommendations

16  evidence disregard of a known and excessive risk to his health.  He does not indicate how the

17  course of treatment he was receiving, which was held by defendants to be adequate, was

18  constitutionally deficient.  He does not allege facts that defendants Silbaugh, Khoury, Cry,

19  Kotila, or Grannis are personally responsible for the harm he claims he has suffered, were

20  responsible for determining which therapeutic treatments would be available at the institution, or

21  even capable of exerting some influence in that regard.  Therefore, plaintiff's complaint does not

22  state a claim upon which relief may be granted under section 1983 for violation of the Eighth

23  Amendment.  Plaintiff will be granted an opportunity to amend his pleading in order to name

24  defendants and make factual allegations that give rise to a cause of action.

25          If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

26  conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  *See*

1   *Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms

2   how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless

3   there is some affirmative link or connection between a defendant's actions and the claimed

4   deprivation.  *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir.

5   1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory

6   allegations of official participation in civil rights violations are not sufficient.  *Ivey v. Board of*

7   *Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

8       In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

9   make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an amended

10  complaint be complete in itself without reference to any prior pleading.  This is because, as a

11  general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375

12  F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no

13  longer serves any function in the case.  Therefore, in an amended complaint, as in an original

14  complaint, each claim and the involvement of each defendant must be sufficiently alleged.

15  **VII.  Plaintiff's Motions for Injunctive Relief**

16      At the time plaintiff filed his motion for injunctive relief, on September 14, 2006,[7] he was

17  being held in Administrative Segregation.  In his motion, he claims that he has been denied all

18  _____

19      [7] The court notes that a previous motion for injunctive relief was filed on September 6, 2006, by Carl D. McQuillion as "next friend" on behalf of plaintiff.  The court finds that

20  plaintiff's motion sufficiently presents his request for relief.  McQuillion's motion differs from plaintiff's in two aspects: in addition to seeking adequate medical treatment, it also seeks an

21  order directing defendants to provide him adequate and effective access to his legal materials and materials sufficient to allow him to effectively prosecute this case, including access to the prison

22  law library and an order directing Warden Mendoza-Powers to explain in detail precisely why he has been placed in Administrative Segregation, and upon which institutional security grounds his

23  continued placement in segregation is justified.  The court notes that, since the filing of this motion, plaintiff filed an opposition to defendants' September 13, 2006, motion to dismiss.

24  Plaintiff filed his opposition on December 7, 2007.  This late filing was not challenged by defendants, and the court deems it timely filed.  Since then, plaintiff has also filed additional

25  requests for the appointment of counsel (December 7, 2006, and December 21, 2006), a response in opposition to another motion to dismiss (June 14, 2007), and a response to defendants' reply

26  to his opposition (July 12, 2007).  Therefore, the court declines to entertain Mr. McQuillion's request for "next friend" status as it is unnecessary to decide that issue at this time.

the medication necessary to treat his chronic seizure condition and seeks an order directing

defendants to (1) provide him with adequate and effective access to his legal materials and any

other materials necessary to prosecute this case; (2) explain in detail why he has been placed in

administrative segregation; (3) provide plaintiff with outside medical treatment, including a

comprehensive medical evaluation and to administer such treatment and medications as are

recommended, without delay, and he asks the court to (4) stay these proceedings until he has

been released from administrative segregation.

A preliminary injunction will not issue unless necessary because threatened injury would

impair the court's ability to grant effective relief in a pending action. *Sierra On-Line, Inc. v.*

*Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871

F.2d 863 (9th Cir. 1989). A preliminary injunction represents the exercise of a very far reaching

power never to be indulged except in a case clearly warranting it. *Dymo Indus. v. Tapeprinter,*

*Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). To obtain a prohibitory preliminary injunction, plaintiff

must demonstrate either probable success on the merits and the possibility of irreparable injury,

or serious questions regarding the merits of his claims and a balance of hardships tipping sharply

in his favor. *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134 (9th Cir. 1979). If the balance

of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a

likelihood of success on the merits as when the balance tips less decidedly. *Benda v. Grand*

*Lodge of the International Association of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978). The

threatened injury must be immediate. *Los Angeles Memorial Coliseum Comm'n v. National*

*Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). The remedy is equitable in nature and

there must be no adequate remedy at law. *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320

(9th Cir. 1994). If the relief sought is mandatory rather than prohibitory, the balance must more

clearly favor the applicant. *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

Plaintiff's motion for injunctive relief seeks adequate medical treatment. He states that

he has attempted suicide and continues to suffer from suicidal ideation due to being denied

1   treatment for his serious medical and psychiatric needs.  He claims that lack of treatment is

2   causing him to suffer seizures almost daily.  He further states that he has been placed in

3   Administrative Segregation "due to defendant's failure to treat" him, yet also states that was due

4   to his "final decision not to continue take [sic] this medication."  Plaintiff's motion seeks an

5   order directing defendants to arrange for an examination and a plan of treatment by a qualified

6   specialist.  Plaintiff does not adequately explain his "final decision" not to take the medication

7   prescribed to him or what alternative treatment he feels is warranted for his condition.  Plaintiff

8   has not alleged that the treatment he is refusing is inadequate.  He only alleges that the side

9   effects of his prescribed medications are undesirable.

10         Plaintiff has not alleged any facts showing that there is a likelihood he will succeed on

11   the merits of his case and that he requires injunctive relief to avoid irreparable harm. The court

12   therefore recommends that plaintiff's motion be denied.

13         Accordingly, it is hereby ORDERED that:

14         1.  Defendants' September 13, 2006 and June 4, 2007, motions to dismiss are granted for

15   plaintiff's failure to state a claim upon which relief may be granted; and

16         2.  Plaintiff is granted 30 days from the date this order is served in which to file an

17   amended complaint that states a cause of action against defendants.  *See* 28 U.S.C. § 1915A; *see*

18   *also Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (indigent prisoner proceeding without

19   counsel must be given leave to file amended complaint unless the court can rule out any

20   possibility that the plaintiff could state a claim).

21         Further , it is hereby RECOMMENDED that plaintiff's September 6, 2006, motion for

22   injunctive relief be denied.

23         These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after

25   being served with these findings and recommendations, any party may file written objections

26   with the court and serve a copy on all parties.  Such a document should be captioned "Objections

to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 29, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE